## COLBY *a.* ROWLEY.

*Supreme Court, Brooklyn Special Term ; March,* 1857.

REAL PROPERTY.—RESALE.—VALIDITY OF ENCUMBRANCES.

A sale on foreclosure was set aside for fraud on the part of the purchaser in pro-
curing the sale; and a resale was ordered, and was made. The first purchaser,
however, had, after taking the sheriff's deed, and before the resale, given sev-
eral mortgages, and afterwards a deed of the premises, which were recorded ,
and judgments had also been docketed against him.

*Held,* on motion that the encumbrancers be declared bound by the order for
resale,—1. That the judgments against the purchaser were merely a lien on his
interest in the premises; and ceased to encumber'it, on the sale to him being
set aside for fraud.

2. That the court had power to inquire into the circumstances under which
the mortgages and the deed were given; and that they formed no answer to
the motion, unless they were taken in good faith, for value, and without notice.

Order to show cause why certain purchasers of real property
from a vendor who had bought at a foreclosure sale, should not
be bound by an order for a resale made upon the foreclosure ;
and why certain mortgages upon the property made by such
vendor should not be delivered up to be cancelled ; and why the
purchaser at the resale should not complete his purchase.

This action was brought by George Colby and his wife against
Robert S. Rowley and others, for the foreclosure of a mortgage.

Judgment of foreclosure and sale having been rendered, the
premises were put up for sale, and were bid off by one John Mont-
gomery. A sheriff's deed to him was subsequently executed.

A motion was afterwards made to set aside the sale to Mont-
gomery for fraud on his part, and this motion was granted and
a resale ordered.

But meantime, no injunction order having been procured,
Montgomery had, before the order for resale, executed a mort-
gage upon the premises in question to one John Kearney ; an-
other mortgage to Jane V. Colby, the female plaintiff in the ac-
tion ; and a third mortgage to one John S. Lawrence, who
assigned it to one Harris Wilson. These mortgages were duly
acknowledged and were recorded prior to the making the order

for the resale.    Montgomery afterwards sold the whole premises
to one Mackerel, October 27, 1856.    There were also judgments
docketed against Montgomery.    The purchaser at the resale
declined to complete his purchase on account of these encum-
brances.

An order was obtained from Mr. Justice Rockwell, on behalf
of the representatives of Wallace Parker, deceased, the former
owner of the premises in question, subject to the mortgage
and judgment of foreclosure, requiring Kearney, Wilson, and
Lawrence to show cause why they should not be held bound by
the order of resale, and why their mortgages should not be
delivered up to be cancelled, and for such other order, &c.
That motion was heard by Mr. Justice Rockwell in June, 1856,
and remained undecided at the time of his decease.    The mo-
tion was now brought on again for argument, notice of it being
also given to Mackerel.    Other facts, important to the case, ap-
pear in the opinion of the court.

*J. S. Woodward*, for the motion.

*J. A. Lott*, for the purchaser at the resale.

*J. Aitken*, for Kearney.

*J. S. Lawrence*, in person.

Birdseye, J.—If any of the encumbrancers of the premises,
as against John Montgomery, subsequently to the completion of
his purchase upon the first sale, come within the description of
*bona fide* purchasers or mortgagees for value, without notice,
then the present motion cannot be granted : so far at least, as
relates to such an encumbrancer, and to the second purchaser.

Is there any such encumbrancer, or purchaser?

The mortgage for $2000 to the plaintiff Mrs. Colby was obvi-
ously given to secure the debt due upon the original judgment.
If the resale is completed, she can be paid that debt out of the
proceeds, and thereupon can be required to cancel her mort-
gage of record.

Upon the papers before me on both sides, I entertain no
doubt that the mortgage for $500 to John S. Lawrence was
a mere renewal of a similar mortgage for $500 held by Har-
ris Wilson on the same premises.    This first $500 mortgage

was assigned by Wilson to Lawrence, who was the counsel for Montgomery. The subsequent assignments and re-assignments of these two mortgages, between the parties, show that, though the sum of $500 may have been and may still be due to Wilson, no credit was ever given by Wilson to Montgomery upon the faith of his ownership of these premises. Wilson's first mortgage is still in full force. If it was a lien on these premises subsequent to the judgment in this case, then he will be entitled to have it paid from the proceeds on discharging it of record. The mortgage to Lawrence does not seem to me to form any sufficient answer to either branch of this motion.

The encumbrancers by judgment against John Montgomery have merely a lien on such interest as he had in the premises; and if the sale and deed to him are set aside, these judgments will cease to be encumbrances upon the premises, especially if it be declared that the deed to him was void by reason of the fraud through which he made the purchase.

On the 29th of October last Montgomery conveyed the premises to Robert Mackerel, subject to all the mortgages then upon them. It is not pretended that a dollar of value was advanced upon the faith of this conveyance; and if there had been, it would make no difference; for, before taking that deed, Mackerel well knew of the proceedings for the resale, and of the order setting aside the first sale to his grantor Montgomery, on account of fraud; and when this motion was first heard before Mr. Justice Rockwell, he (Mackerel) intervened by an affidavit to uphold the remaining encumbrance—that of John Kearney. Mackerel, therefore, if a purchaser at all, in the true sense of that term, is a purchaser with full knowledge of the fraud, if he was not a party to it. He cannot stand in the way of ripping up that fraud.

The only other question is, as to the rights of John Kearney. This mortgage, though dated on the fifth day of January, 1855 (the day that Montgomery completed his purchase and took the sheriff's deed on the first sale), was acknowledged and recorded on the 16th of January, 1855, and after the service on him of Judge Rockwell's order of January 15, 1855, requiring him to show cause why the sale to him should not be set aside by reason of his fraud in the purchase.

The papers for this motion distinctly charge him with collusion

and fraud, and with ante-dating this mortgage.   He denies that there was any *collusion* between him and Kearney, but takes special care not to deny the allegation as to the ante-dating of the mortgage.   Still, however fraudulent were the conduct and designs of Montgomery in the transaction, if Kearney actually and in good faith advanced the money for and on the faith of this mortgage, he is entitled to protection.   Did he do so ?   As to $200 of the mortgage, it is confessedly for a pre-existing debt.   The remaining $600 of the mortgage, it is said, was advanced by this same Robert Mackerel to Montgomery, at the request of Kearney and not by Kearney himself.

I shall not stop to analyze at length the affidavits of these three parties, but shall merely allude to the things which they omit to state.   Montgomery does not state that he received the $600, or any part of it ; or if he did receive it, what he did with it, or any part of it ; or that it was not handed back to Mackerel.   Neither Mackerel nor Kearney states that the advance, if made, was made on the credit of Kearney, or that he ever was or now is liable to Mackerel for it ; or that he has ever paid it to Mackerel ; or that the money, if it passed from Mackerel's hands to those of Montgomery, was not forthwith handed back to Mackerel, and any pretended liability therefor immediately extinguished.   The only statement on the subject of the advance is that Kearney, when applied to by Montgomery for the loan of the $600, agreed at once to loan it ; but not having that sum by him, he requested Mackerel to advance it to Montgomery, for which he (Kearney) *agreed to repay him, and did arrange thereafter with said Mackerel for said sum of* $600, *which said Mackerel did advance on said day to said Montgomery at* (Kearney's) *said request.*   And this whole transaction, from its inception to its completion, seems to have taken place in a single ,day ; and that day was a whole month, lacking only twenty-four hours, before the mortgage was in fact given.

Could either of these men be punished for perjury if it should be proved that this $600 was advanced by Mackerel to Montgomery, without any liability on the part of Kearney, and forthwith re-delivered, either directly or indirectly, to Mackerel ?

Honest men do not so do their business, or give such accounts as these of their transactions.   To allow Montgomery, by such flimsy pretexts as these, to crown with success the gross fraud

upon the infant children and the creditors of Wallace Parker, by which he originally purchased the premises at the mortgage sale, would be offering a bounty upon dishonesty, and enable a bungler in cheating to set this court at defiance.

Motion granted, with $10 costs, to moving party, to be paid by either Montgomery, Mackerel, or Kearney.